IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, )
                          )
          Plaintiff,      )  Case No. 82-CR-93-BT
                          )  Case No. 85-CR-36-C
v.                        )
                          )
JAMES W. BOLT,            )
                          )
          Defendant.      )

## OPINION AND ORDER

Before the Court are the Petitions for Writs of Error Coram Nobis, filed by the defendant, James W. Bolt, on September 4, 2018. (Doc. 170 in 82-CR-93-BT; Doc. 77 in 85-CR-36-C).[1] Mr. Bolt asserts that the Court lacked jurisdiction over his convictions in 82-CR-93-BT and 85-CR-36-C, because "[n]othing in either indictment described the Indian status of the defendant; the Indian status of any victim nor the status of the Creek Nation reservation wherein the alleged criminal activity was claimed to have occurred." (Doc. 77 at 2).

United States District Judge Thomas R. Brett presided over Mr. Bolt's 1982 case, in which a jury returned guilty verdicts on two counts of making false statements in loan applications, in violation of 18 U.S.C. § 1014, and two counts of mail fraud, in violation of 18 U.S.C. § 1341. Judge Brett sentenced Mr. Bolt to 18 months' imprisonment for the § 1014 counts and 4 years' imprisonment for the § 1341 counts, to run consecutively. Judge Brett also sentenced Mr. Bolt to 4 years of probation.

United States District Judge H. Dale Cook presided over the 1985 case, in which Mr. Bolt was found guilty and convicted of two counts of mail fraud and aiding and abetting, in violation

---

[1] Because the Petitions filed in the two cases are identical, the Court will cite only to the Petition filed as Document 77 in the later case.

of 18 U.S.C. §§ 1341 and 2, and one count of making false statements to a federally insured bank, in violation of 18 U.S.C. § 1014. Judge Cook sentenced Mr. Bolt to four years' imprisonment, to run consecutively to the sentence in 82-CR-93-BT. Judge Cook also sentenced Mr. Bolt to five years of probation to begin upon his release from custody.

In support of his Petitions, the defendant cites the Tenth Circuit's 2017 decision in *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017), *cert granted*, 138 S. Ct. 2026 (2018). In *Murphy*, the Tenth Circuit concluded that Congress had never disestablished the Creek Reservation, which covers a significant part of eastern Oklahoma. 875 F.3d at 966. Mr. Bolt also cites to a line of Tenth Circuit cases holding that the Indian or non-Indian status of the defendant and the alleged victim are essential elements of the crime of arson in Indian country under 18 U.S.C. §§ 81 and 1152. *See United States v. Prentiss*, 206 F.3d 960 (10th Cir. 2000) ("*Prentiss I*"); *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001) (en banc) ("*Prentiss II*"), *overruled on other grounds as recognized by United States v. Sinks*, 473 F.3d 1315, 1321 (10th Cir. 2007); *United States v. Prentiss*, 273 F.3d 1277 (10th Cir. 2001) ("*Prentiss III*").

Addressing Mr. Bolt's argument requires a brief summary of what are known as "federal enclave laws." Federal enclave laws are "those laws passed by the federal government in the exercise of its police powers over federal property." *United States v. Blue*, 722 F.2d 383, 385 (8th Cir. 1983). These laws are "defined in the United States Code in terms of 'special maritime and territorial jurisdiction of the United States.'" *Id*. (citing 18 U.S.C. § 7). One such federal enclave law prohibits arson "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 81.

Pursuant to 18 U.S.C. § 1152 (the "Indian Country Crimes Act"), the federal enclave laws extend to Indian country—as long as the alleged crime occurred between an Indian and a non-

2

Indian. *See Prentiss I*, 206 F.3d at 966. In other words, "the crime must be what courts have termed 'interracial.'" *Id*. Thus, in order for the government to charge a defendant with a crime under § 1152, the government must allege and prove that the crime occurred in Indian country and that it occurred between an Indian and a non-Indian. *Id*. at 969.

Mr. Bolt misreads the *Prentiss* cases as requiring these additional elements for any crime occurring in Indian country. That is simply not the case. The law is clearly established that Indian persons are not exempt from generally-applicable laws that apply to acts that are federal crimes regardless of where such crimes were committed. *See, e.g., United States v. Drapeau*, 414 F.3d 869, 877-78 (8th Cir. 2005); *United States v. Carpenter*, 163 F. App'x 707, 709-10 (2006) (unpublished). *See also Blue*, 722 F.2d at 384 ("[18 U.S.C. § 1152] applies only to federal enclave laws and does not encompass federal laws that make actions criminal wherever committed."). The statutes under which Mr. Bolt was convicted—18 U.S.C. §§ 2, 1014, and 1341—are not federal enclave laws, and the government did not depend on § 1152 in charging him with these crimes. Thus, *Prentiss* does not apply here, even if Bolt's crimes occurred in Indian country as determined by *Murphy v. Royal*.

Mr. Bolt also mentions, in passing, 18 U.S.C. § 1153 (the "Major Crimes Act"). The Major Crimes Act "extends federal jurisdiction over fourteen specific offenses committed by Indians in Indian Country." *Prentiss I*, 206 F.3d at 968, n.8. Even assuming Mr. Bolt is Indian himself—a fact that "remains undetermined" (Doc. 77 at 8)—federal jurisdiction in Mr. Bolt's cases did not depend on the Major Crimes Act; instead, he was charged with violating generally-applicable federal statutes. Any additional elements required by the Major Crimes Act concerning the status of the defendant and the location of the crime are not relevant here.

The remedy of a writ of coram nobis is an extraordinary remedy permitted only under compelling circumstances. *United States v. Morgan*, 346 U.S. 502, 511-12 (1954). To obtain relief by writ of coram nobis, the defendant must have been convicted upon such "fundamental errors" as to render the proceedings invalid. *See Ward v. United States*, 381 F.2d 14, 15 (10th Cir. 1967).

Extraordinary writs are typically not the appropriate manner of challenging a judgment and sentence. However, a writ of error coram nobis may be used "to vacate a federal sentence or conviction when a § 2255 motion is unavailable – generally when the petitioner has served his sentence completely and thus is no longer 'in custody' as required for § 2255 relief." *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996). Here, Mr. Bolt has fully served the sentences imposed in both the 1982 and 1985 cases. (Doc. 77 at 1). However, Mr. Bolt has presented no basis for relief from his federal convictions and sentences—much less a compelling reason to justify an extraordinary writ. As such, Mr. Bolt's requests for relief (Doc. 170 in 82-CR-93-BT; Doc. 77 in 85-CR-36-C) are thus **dismissed**.

DATED this 2nd day of October, 2018.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE